(118 So. 865)

No. 28905.

**FONTINI et al. v. PINE GROVE LAND CO., Inc.**

**DUBOURG et al. v. JENKINS et al.**

Oct. 31, 1927.   On the Merits Oct. 29, 1928.

Wm. Winans Wall, of New Orleans, for appellants.

Harvey E. Ellis, of Covington, and Frederick C. Querens, of New Orleans, for appellees.

ROGERS, J. Appellees have moved to dismiss the appeal in each of these consolidated cases on the following grounds, viz.:

1. "That the said alleged bond bears no date of execution and is not signed by the appellants as principals therein and does not obligate the said principals to have the same paid out of the proceeds of the sale of their estate; nor does it declare the nature or character of the judgment so appealed from; and that said bond does not conform to the requirements of the law and is not a protection to the appellees."

2. "That the said document offered as a bond has no effect under the laws of this state as such, as the same is not made payable in accordance with the laws of this state in favor of the clerk of the court which rendered a judgment intended to be so appealed from and is not a bond covering the appeal from a judgment rendered by said court, as indicated by the designation of said cause in question."

We do not find any warrant for dismissing the appeals upon any of the grounds set forth in the first paragraph of the motion.

The omission of the dates from the bonds is immaterial. They were filed in the court below on August 27, 1927. It was at that moment only they became effective. Thereafter the obligations of the surety and the rights of the appellees were fixed in accordance with the terms of the instruments, and the signatures of the appellants are not indispensable to the validity of the bonds. Frankel v. Timber Co., 140 La. 448, 73 So. 263.

Appellees are mistaken in their contention that the bonds do not obligate the principals to satisfy any judgment rendered against them out of the proceeds of their estates. A mere reading of the instruments discloses the contrary to be true. Moreover the omission of the clause would not have been fatal. Byrne v. Riddell, 4 La. Ann. 3; Guion v. Creditors, 19 La. Ann. 81.

Nor do we find any basis for dismissing the appeals on the ground set forth in the second and last paragraph of appellees' motion.

Their contention is that the instruments lack substance in their forms, because, according to their recitals, they are bonds supporting appeals from judgments of the "Twenty-Sixth Judicial District Court" and are made payable to the "Clerk of said Court," whereas, in truth and in fact, the judgments were rendered by the "Twenty-Second District Court."

But there is only one district court for the parish of St. Tammany. Prior to the Constitution of 1921 it was known as the "Twenty-Sixth Judicial District Court in and for the Parish of St. Tammany." The Constitution changed the designation of the court to the "Twenty-Second District Court in and for the Parish of St. Tammany." In drawing up the bonds in question here, the appellants merely used the forms that were on hand in the court prior to 1921. They were, however, made payable to William E. Blossman, who is the clerk of the Twenty-Second district court. In the case of Mrs. Louisiane Dubourg et al. v. Percy Jenkins et al., the number and title is correctly given both in the caption and body of the bond. The date of the rendering and signing of the judgment, the name of the suit, and the parties cast therein are also correctly stated. The same is true of the bond in the other case, with the exception that in the body of the instrument the defendant is designated as the Pine Grove Realty Company, Inc., instead of by its real name, Pine Grove Land Company, Inc.

The inaccuracies pointed out by appellees in the appeal bonds are, at most, only clerical errors. Irrespective of these errors, we think the instruments are sufficiently identified with the motions of appeal and the judgments appealed from. The irregularities are not of such gravity as will defeat appellees in an action on the bonds.

For the reasons assigned, the motions to dismiss the appeals are denied.

## On the Merits.

OVERTON, J. The first of these consolidated cases is a suit by Alfred Fontini and his sister, Mrs. Louisiane Fontini Dubourg, against the Pine Grove Land Company, Inc., to recover a one-half undivided interest in portions of lots 9, 10, and 11 in the town of Mandeville, the portion sought to be recovered, with respect to each lot, measuring 191.-83 feet along the shore of Lake Pontchartrain by a depth of 1,200 feet between parallel lines, according to a survey made by Howard Burns, parish surveyor, dated September 9, 1914. The second of these suits is to recover an undivided one-half interest in the remainder of lot No. 9 and a two-thirds undivided interest in the remainder of lots No. 10 and 11, these remainders fronting on Monroe street and running back towards Lake Pontchartrain, between parallel lines, to the rear lines of the portions of said lots, mentioned in the first suit, and containing the same widths as those portions. Each suit also contains a demand by the plaintiffs for a partition. The defendants in the latter suit are four of the grandchildren of Sarah Fontini, namely, Percy, Sydney, Edna, and Francis Jenkins, and one great grandchild, to wit, Pansy Jenkins.

Plaintiffs contend that all of lots 9, 10, and 11, running from the lake to Monroe street, belonged to their mother, Sarah Fontini, at the time of her death in 1878, and that their mother left four children, to wit, Annaise, Cordelia, Louisiane, and Alfred Fontini, the two latter being the plaintiffs in these suits. They urge that, as their mother died intestate, the interest of each child in her estate was one-fourth, and they further urge that they have not parted with the interests that they inherited. They also contend, in their suit against Percy Jenkins and others, that

they inherited from their sister, Cordelia Fontini, a one-twelfth interest each in lots 10 and 11.

The defendants in the two suits admit the correctness of all plaintiffs' contentions, stated in the preceding paragraph, except the following: They deny that lots 10 and 11 ever belonged to Sarah Fontini, and aver that these lots were acquired at tax sale, prior to the death of Sarah Fontini, by her daughter Cordelia Fontini, and hence deny that plaintiff inherited any part of those lots from their mother. They also deny that plaintiffs did not part with the interest, inherited by them from their mother, Sarah Fontini, in lot 9, and aver that plaintiffs, by authentic act sold to Cordelia Fontini and Carlos H. Jenkins, in 1882, the interest inherited by them from their mother. The defendants, in the suit against Percy Jenkins and others, deny that plaintiffs inherited any part of lots 10 and 11 from Cordelia Fontini, and contend that the latter, a few years before her death, sold these lots to others, and that no part of them was thereafter acquired by plaintiffs. The defendants, in both suits, set out the chains of title under which they claim, and urge various pleas of prescription against plaintiffs' demands, including the prescriptions acquirendi causa of 10 and 30 years.

Mrs. Sarah Fontini died in 1878. Of the four children left by her, Cordelia never married. She died intestate, while living in the residence on lot 9, in 1912. Annaise married Carlos Jenkins prior to her mother's death. She and her husband, immediately following their marriage, lived with Sarah Fontini in the family residence on lot 9. They continued to live in the residence on that lot after Sarah Fontini's death, together with Cordelia, and there reared a family of six children. Louisiane, another daughter, and one of the plaintiffs in these suits, married E. L. Dubourg, prior to her mother's

death, and she lived for some 40 years thereafter across the street from the old homestead. Alfred Fontini, the remaining child and one of the two plaintiffs herein, does not appear to have lived on the property involved herein after the year 1882. Cordelia Fontini lived on the property continuously after her mother's death, until she herself died in 1912; the Jenkins family living a great part of the time in the house with her.

Cordelia Fontini raised a garden each year on lot 9. She also fenced and cultivated parts of lots 10 and 11, and had a cattlepen for a time on a part of lot 11. In these operations she was assisted by her niece, Sarah Jenkins, one of the children of the marriage of Annaise Fontini with Carlos Jenkins, after Sarah grew old enough to assist her aunt. Carlos Jenkins, the husband of Annaise Fontini, during a part of the period in which he lived on the property, had a blacksmith shop on lot 10. He died about 1903.

Some years prior to the death of Cordelia Fontini she sold lot 10 to her niece, Sarah Jenkins, and shortly before her death she also sold a half undivided interest in lot 9 to this niece, defining that interest as her entire interest in that lot. After Cordelia Fontini's death, Sarah Jenkins continued to occupy lots 9 and 10 until her death in 1926.

When Sarah Fontini died in 1878, her succession was opened, and her son-in-law, Carlos Jenkins, qualified as administrator thereof, but the probate proceedings do not appear to have gone any further than the obtaining of an order to sell the property to pay debts and to effect a partition. The order was never executed.

We mention the foregoing facts concerning the occupancy of the property merely to show the general situation that existed, and not as bearing on the pleas of prescription filed.

If, as contended by defendants, Alfred Fontini and Mrs. Dubourg have parted with the undivided one-half interest in lot 9, which they inherited from their mother, Sarah Fontini, then, as they do not claim to have acquired any other interest in this lot, it is patent that they have no interest in it to recover. Also, if Mrs. Sarah Fontini was never the owner of lots 10 and 11, it is manifest that Alfred Fontini and Mrs. Dubourg inherited no interest from her in them, and likewise, if Cordelia Fontini was the owner of lots 9 and 10 and sold them, it is clear that they inherited no interest in them from her. If these contentions of defendants be true, then plaintiffs' cases necessarily fail.

█ Defendants have produced an act of sale, authentic in form, passed on December 30, 1882, before William C. Morgan, clerk of court and ex officio notary public, which purports to have been signed by Alfred Fontini and Mrs. Dubourg, conveying their undivided one-fourth interest each in and to lot 9 to Carlos H. Jenkins and Cordelia Fontini. If this deed be genuine, it conveys all the interest that plaintiffs claim in lot 9. The presumption is that the deed is genuine, for as declared in Civil Code, art. 2236:

"The authentic act is full proof of the agreement of the parties contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery."

Plaintiffs contend that what purport to be their signatures to the deed are not theirs, but forgeries. The plaintiff Alfred or A. E. Fontini testified that what purports to be his signature to the deed is not his. When asked what peculiarity be found in the signature he replied, in the letter "E," and said that he always signed his name "A. E. Fontini," connecting the three letters "A. E. F.," and has always so signed it. Here these three letters are not connected, with the exception of the "E" and the "F," which, as appears from the original deed before us, are so connected as to give the "E" the appearance of a "J." In addition, it may be said that what purports to be Fontini's signature was first written apparently in purple ink,

and then, seemingly without any effort to conceal that fact, was written over the purple with black ink. The plaintiff Mrs. Dubourg testified, denying that she signed the deed, though volunteering the statement that, prior to the date of the deed, she sold verbally her interest in the property to Cordelia Fontini, one of the vendees named in the deed.

In addition to the foregoing facts it is pointed out that the deed not only purports to transfer plaintiffs' interest in lot 9, but also their interest in cattle, bearing a named brand, and inherited by plaintiffs from their mother, when both plaintiffs testify that the cattle inherited and bearing that brand had been extrajudicially partitioned, prior to the date of the deed, and hence that there was no such interest to sell.

It is also pointed out, in order to account for the manner in which the alleged forgery was committed, that the deed, instead of having been executed at the office of the clerk of court, as might have been expected, recites that it was executed at Mandeville (which is in the same parish in which the clerk's office is located), and in the presence of two witnesses, one of whom the evidence shows was a lawyer, and the other the sheriff, and it is also pointed out that both of these witnesses, as well as the clerk of court, before whom the deed purports to have been passed, resided at Covington, the parish seat. It is urged, in this connection, that it is unlikely that the clerk, the sheriff, and the remaining witness were all together in Mandeville on the same day. From this, the inference is drawn that the deed was not in fact signed in the presence of the clerk and the witnesses named, and that in this manner the forgeries were committed, without the knowledge or consent of the clerk and the attesting witnesses. In support of this theory, it is also pointed out that the signatures to the deed are not written with the same ink; some having been written with purple ink and some with black.

The foregoing is all the evidence that was produced on the question of the forgery of this deed. During the 44 years that intervened between the date of the deed and the filing of this suit, the clerk before whom the deed was passed, the witnesses to it, and the vendees, who also signed it, have died. Their evidence, therefore, was not available. The only parties to the instrument now alive are the two plaintiffs.

In our view, the evidence adduced, though sufficient to cast some suspicion on the deed, does not justify us in declaring it a forgery. The deed has been of record for years, and was never questioned until this suit was filed. The deed recites, as is usual in deeds by notarial act, and as should appear in some manner therein, that the parties to it appeared before the officer executing it, made their declaration as to the sale, and signed the instrument before him, in the presence of the witnesses, who attested it, and in whose presence it was passed. The law attaches a high degree of proof to the recitals in authentic acts. Here, as is the rule in passing such deeds, the clerk recited that the parties signed before him in the presence of the attesting witnesses. Such a recital furnishes a high degree of proof of the fact recited, and is strong evidence that the parties whose signatures appear on the instrument actually signed it. The proof furnished by such a recital is not easily overcome, especially after the officer who passed the act, the attesting witnesses, and the vendees are dead. We attach no particular importance to the fact that the deed recites it was passed at Mandeville. The witnesses who attested it may well have been there on the day it was executed, as well as the clerk of court. There is nothing strange in that fact. We attach no particular significance to the fact that the signatures to the deed are not all written with the same ink. This may occur, and yet an instrument be signed at the same time by the parties to it, before the

same officer. These circumstances are of but little weight, and even have a tendency, on account of their very apparentness, to show that the deed was not forged. The only circumstance in that connection entitled to serious consideration is the fact that Alfred Fontini's name appears to have been written first with purple ink and then over the purple in black. However, apparently there was no attempt to conceal that fact. It is patent at a glance. It may well have been, as sometimes occurs, that Fontini was not satisfied with his signature, and wrote or traced it over. As to the evidence concerning plaintiffs' denial of their signatures, we may say, as did the trial judge, that, due to their old age, they have forgotten the signing of their names to the instrument. We conclude that plaintiffs, by this deed, parted with their interest in lot 9.

As to the one-half interest claimed by plaintiffs as heirs of their mother, in lots 10 and 11, the first question that presents itself, and the only one that we think it is necessary to consider, is whether their mother owned those lots at the time of her death. This depends upon the effect, if any, to be given to the change of an initial in a tax deed through which both plaintiffs and defendants claim. The deed was signed by the tax collector in 1875, and evidently was written to read that those lots were adjudicated to Mrs. S. Fontini (Sarah Fontini) and the deed was recorded with Mrs. Fontini as adjudicatee. Thereafter over the letter "S" was written the letter "C" (Cordelia), apparently, though not with certainty, by the tax collector, judging from a comparison of handwriting. Plaintiffs contend that this change was fraudulent. Defendants urge that it was made by the tax collector to correct an error in the name of the adjudicatee, when his attention was called to it. We are inclined to adopt defendants' view of the change, although this is an irregular way of correcting such an error. Lots 10 and 11 adjoin lot 9, which was the home place of Mrs. Fontini. Notwithstanding that fact, soon after the death of Mrs. Fontini, when the inventory was taken of her estate, while lot 9 was included, lots 10 and 11 were not. Not only that, but Cordelia Fontini always claimed these lots, and some years later sold both of them, selling lot 11 to Eugene Mumford in 1905, who sold it to Ray C. Moore in 1911, and who in turn sold to H. A. Soulie in 1913. After Cordelia Fontini sold this lot, a residence was erected on it by one of the owners. The residence has been occupied ever since, and was occupied by Soulie as his home at the time this suit was instituted, and has been so occupied by him for over ten years. This fact was within the knowledge of plaintiffs for they lived in that immediate vicinity for all those years. Notwithstanding that knowledge, they did not complain, or lay any claim to lot 11, until this suit was filed. Moreover, plaintiffs paid no taxes on these lots. Cordelia alone paid taxes on them until she sold. In fact, plaintiffs did not concern themselves with these lots, and certainly after 1882, with lot 9, until this suit was filed, about which time the lots suddenly rose greatly in value. Our conclusion is that the change in this deed was made, with the knowledge of all concerned at the time, to correct an error.

As Cordelia Fontini sold lots 10 and 11, she had no interest in them at her death for plaintiffs to inherit. Therefore their demand, claiming an interest therein from her by inheritance, cannot be allowed.

As to that portion of lot 11, occupied by Soulie as his home, and claimed by plaintiffs in the suit against Percy Jenkins et al., the trial court dismissed plaintiffs' suit, for the reason that Soulie was not made a party to it, and, in other respects, rejected plaintiffs' demands in both suits by recognizing defendants' titles. The judgment is correct.

For the reasons assigned, the judgment appealed from in each suit is affirmed.