## AGURS v. PUTTER.

### No. 3869.

Court of Appeal of Louisiana. Second Circuit.

April 5, 1932.

For former opinion, see 137 So. 640.

John B. Files, of Shreveport, for appellant.

Arthur A. LeRosen, of Shreveport, for appellee.

PALMER, J.

Alleging himself the holder and owner of the note sued on, plaintiff brings this action for the recovery of a balance of $439.40, claimed to be due thereon. In connection with the suit, he asks for recognition and enforcement of a mortgage and vendor's lien against certain property given and retained to secure the payment of said note.

In substance, he alleged that on May 6, 1922, defendant purchased the property in question from the Douglas Island Land & Improvement Company for a consideration of $500, paying $50 cash, and executing his promissory note for $450, due one year after date, payable to himself and by him indorsed in blank, covering the balance of the purchase price, the vendor retaining a special mortgage and vendor's lien on the property conveyed to secure the payment of the said note; and that defendant, as shown by the credits on the reverse of the said note, made payments thereon as follows: On July 18, 1923, paid $6.40 on the principal and $43.60 on the interest; and on September 22, 1925, paid $5 on the principal and $36 as interest.

Plaintiff amended his petition, alleging that, while the payments were made to him,

he was acting for Mrs. M. D. Agurs, who was then the holder and owner of the note.

Defendant filed an exception of no cause or right of action, which was overruled. He then filed a plea of prescription of five years, which was, by consent of counsel, referred to the merits.

The defendant, in effect, entered a general denial, and, in addition, alleged that he is the owner of the property in controversy, but under a chain of title not including the alleged transfer from the Douglas Island Land & Improvement Company. He avers that on November 9, 1897, he borrowed $30 from plaintiff on this property, and secured the loan by an instrument which he later found out was a redemption deed, although he continued in possession of the property and that the loan was repaid on or before the year 1908.

He further alleges that plaintiff, without any interest in or title to said property, on July 6, 1912, attempted to transfer it to the Douglas Island Land & Improvement Company, a corporation of which plaintiff was president and sole manager, invested with full authority to represent the corporation, but that the transfer was without consideration, and passed no title and constituted a fraud upon defendant.

He further alleged that on May 6, 1922, plaintiff, acting under the name of the said corporation, represented to defendant that he desired to reconvey the property to him, and accordingly recorded the deed from the corporation to defendant, with which the note sued on is identified; that he could not read or write, and did not intend to execute a vendor's lien and mortgage on said property or to acquire title thereto from said corporation; that all the indebtedness he ever owed plaintiff was the said $30 borrowed in 1897; that he was never indebted to said corporation, but, if the instruments in which plaintiff and the said corporation figure are held to be genuine, then they were brought about by the misrepresentations of plaintiff to defendant, and therefore have no validity as transfers of property.

Defendant pleads in the alternative that, if it be held plaintiff is the holder of a mortgage upon the said property, he is the head of a family, occupying said premises with his family as a homestead, and has so occupied it since he acquired it in 1892, and that the property is worth less than $2,000.

On these issues the case went to trial in the lower court, resulting in a judgment for plaintiff, as prayed for. From that judgment, defendant has appealed.

After the judgment of the district court was signed, the defendant died. The administrator of his succession was substituted as defendant.

## Plea of Prescription.

The defendant has pleaded the prescription of five years as a bar to plaintiff's demands. That plea is based upon the following facts revealed by the record: The note is dated May 6, 1922, and matured one year after date, or on May 6, 1923. The service in this case was made on May 8, 1928. It is apparent, therefore, that more than five years elapsed between the due date of the note and the service in this suit, so prescription has run, unless there were some intervening causes that prevented it.

Plaintiff resists the plea on the following grounds: First, that the due date of the note (May 6, 1923) fell on Sunday, which extended the date of payment to the following day (May 7, 1923), and that prescription did not begin to run until the cause of action accrued, which was May 8th, contending that the five years did not expire until May 8, 1928, the date on which the citation was served; and second, that prescription was interrupted by two payments made on the note by defendant, one on July 18, 1923, and another on September 22, 1925.

There was no testimony introduced to show that May 6, 1923, was Sunday. Counsel meets that situation with the argument that the court must take judicial notice of the fact that a particular date is a dies non.

█ It is a fact that, when a promissory note falls due upon Sunday, or a holiday, the next succeeding business day is the date of maturity (Act No. 64, § 85, of the Legislature of Louisiana for the year 1904). It is clear, therefore, that a cause of action on a promissory note does not accrue, when the note falls due on Sunday, or a holiday, until after the "next succeeding business day," and hence prescription does not begin to run until after the expiration of the extended maturity date. Kimball & Singer v. Fuller & Miller, 13 La. Ann. 602; Wardwell v. Sterne, 22 La. Ann. 28; Breaux v. Broussard, 116 La. 215, 40 So. 639. So in this case, if May 6, 1923, the stipulated due date, fell on Sunday, the note did not become payable until the following day (May 7th), and did not then, unless that day was a "business day." If May 7th became the due date, then the cause of action did not accrue until after the due date expired, or until May 8th.

██ It is a rule of law that the court will take official notice of the fact that a particular day is a dies non. Huie v. Brazeale, 19 La. 457; Whaley v. Houston, 12 La. Ann. 585. But this rule will not be extended so as to cover an unreasonable time. It is easy for the court to consult the calendar when a date is involved touching upon what may be classed as current matters to determine the day of a given date, but in this case it has been almost nine years since the note sued on became due. It would entail an unreason-

able hardship upon the court to have to determine if May 6, 1923, fell on Sunday. This rule will not be extended to cover such a long period of time. In cases involving a holiday reaching back over a period of years, a party to a suit whose rights are affected thereby should introduce evidence to establish the fact. The court in such cases will not ex proprio motu take notice of its existence.

■ In this case, however, even if the facts are as claimed by plaintiff, it would avail him nothing. He says May 6, 1923, was Sunday, thus extending the due date of the note to Monday, May 7th, and that the cause of action did not accrue until May 8th. Even so, the prescriptible period began with May 8, 1923, and ended with May 7, 1928. The service was not made until May 8, 1928, so five years had fully expired at that time.

■ It is clear, therefore, that the note is prescribed, unless the payments as credited on the note were actually made by defendant, because even payments of interest interrupt prescription. Marcelin v. Creditors, 21 La. Ann. 423; Canal Bank, etc., v. Ascension Bank, 140 La. 465, 73 So. 269.

■ As will be readily observed, a decision of that point turns entirely upon a question of facts. The burden of that undertaking rests upon plaintiff.

■ As a review of the evidence will show, plaintiff testified that the payments were truly made as shown by the credits on the back of the note. He is corroborated by C. F. Rushing, who worked for plaintiff for three or four years, beginning in 1921. He said during that time he saw defendant in the office of plaintiff make payments to plaintiff. Robert McElroy, who also worked for plaintiff from 1924 to 1926, saw defendant during that time come to the office of plaintiff on several occasions, to transact some kind of business.

The defendant not only denied the payments credited on the note, but also denied the execution of the note itself, notwithstanding the note was paraphed by the notary to identify it with the mortgage. In considering this plea, the lower court evidently gave due consideration to the facts on which the interruption hinges, and overruled the plea. We find no error in that ruling.

### The Merits.

The record shows that on November 9, 1897, Allec Putter conveyed to W. C. Agurs lot 42 of ten-acre lot 14, with improvements, situated in the city of Shreveport, for a consideration of $30. The deed contains this stipulation: "It is agreed that said Putter shall have the right to redeem said property at any time within three months from date by paying to the said Agurs in cash the sum of $30.00." Agurs never reconveyed the property to Putter, nor did he ever issue any writing evidencing the fact that Putter, within the time specified or within any other period of time, repaid the $30. Agurs, however, did not take possession of the property, so, as between plaintiff and defendant, the contract was deprived of the essential characteristic of a redeemable sale. Collins v. Pellerin, 5 La. Ann. 99. However, there was no dispute over this question, because Agurs, for about fifteen years after the time limit for redeeming the property expired, continued to treat the instrument as one of security only.

On January 6, 1912, Agurs, for a stated consideration of $300 cash, conveyed by warranty deed this property to Douglas Island Land & Improvement Company, Limited. The title thus stood in the name of said corporation until May 6, 1922, on which date it executed unto the defendant a warranty deed conveying this property for a stated consideration of $500, of which $50 is stated to have been paid in cash, and the balance of $450 is said to be represented by the promissory note of defendant, due one year after date, and which is the note sued on in this case.

Some of the facts incidental to, connected with, or growing out of, the record transactions referred to above are in serious dispute between plaintiff and defendant. For instance, the defendant claims the only money he ever borrowed or received from plaintiff was the $30 he borrowed on November 9, 1897. He also claims that during the intervening years he paid all taxes assessed against said property. On the other hand, plaintiff claims to have advanced cash to defendant during the years 1901 to 1912, inclusive, amounting to about $237, which included the amount of taxes he says he paid for defendant on this property during that period, and that during the same time defendant made payments to him on these advances, aggregating $68.

On the question of the genuineness of the deed from the Douglas Island Land & Improvement Company to defendant, conveying this property, and the note alleged to have been executed by defendant, covering the larger portion of the purchase price, defendant denies the transfer and denies the execution of the note. On the other hand, in addition to the fact that the deed containing the special mortgage and vendor's lien, including the note identified therewith, is a notarial act, plaintiff testified that defendant sought to repurchase the property, and that, for the consideration and upon the terms stated in the act of conveyance, the said corporation transferred the property to him.

On the question of the genuineness of the payments credited on the note, defendant denied that he made such payments. On the

other hand, plaintiff testified that the payments were made by defendant at the time and in the amounts as shown on the reverse of the note, and he was corroborated in his testimony to some extent by two employees who formerly worked for him. One of them, C. F. Rushing, testified that he was employed by plaintiff in 1921, and worked for him for three or four years, and that during that time he saw defendant in the office and make payments to plaintiff. The other employee, McElroy, testified that he worked for plaintiff from 1924 to 1926, and that during that time he saw the defendant on several occasions in the office of plaintiff.

■ It might be reasoned with some force that the deed from defendant to plaintiff on November 9, 1897, containing the redemption clause, was only an act of security, and that the amount required for the redemption was timely paid, or, if not paid, that the act as a mortgage, not having been reinscribed, prescribed long before plaintiff asserted any ownership of the property. But such reasoning would avail defendant nothing if indeed he purchased the property from the Douglas Island Land & Improvement Company on May 6, 1922, on the terms and for the consideration as written in that act of conveyance. If he dealt with the said corporation as owner of the property, and sought and received a title from it, and executed his note as evidence of the credit portion of the purchase price, he is estopped to dispute his author's title or the genuineness of the title he thus sought and accepted, as well as the note he gave to represent the balance due on the purchase price. A plea of estoppel, based upon this ground, was filed by plaintiff after the answer was filed.

■ The deed from the Douglas Island Land & Improvement Company to defendant is a notarial act, regular in form, passed before J. E. Croom, deputy clerk of court and ex officio notary public, in the presence of two attesting witnesses, and apparently signed by the vendor and the vendee. The law as to the force and effect of authentic acts is contained in Civil Code, article 2236, as follows: "The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery."

Therefore the presumption is that this deed is genuine and it must be so accepted, "unless it be declared and proved a forgery." Fontini v. Land Company, 167 La. 138, 118 So. 865.

Defendant does not allege that the deed is a forgery. His allegations are in substance that plaintiff, acting in the name of Douglas Island Land & Improvement Company, stated that he desired to place the property back in his name, and accordingly recorded the deed in question, and that defendant did not pay the cash consideration recited in the deed, that he cannot read or write, and that he did not intend to acquire the property from the said corporation nor to give a mortgage or vendor's lien thereon.

■ It will readily be seen that neither forgery nor fraud is alleged by the defendant in regard to this transaction. Under a liberal construction placed upon his pleadings, it may be held that the defendant has alleged that he signed the deed in question through error, and therefore had the right to prove by parol evidence the error alleged. But, when we come to consider his testimony, we find that he does not even attempt to prove any error. He made no claim in his testimony that plaintiff or the Douglas Island Land & Improvement Company deeded, or was due to deed, him this property, and that in discharging that obligation they, through error, specified a cash payment, which he did not make, and a note for the balance of the consideration, which he did not execute. If he had given such testimony, he possibly would have been within his pleadings, but his evidence tends to prove forgery and not error. As already stated, he did not allege forgery; however, since no objection was made to his testimony on the ground of irrelevancy, the pleadings may be considered as amended so as to admit proof of forgery.

■ The question to be decided here is: The deed under consideration being an authentic act, and hence full proof of the agreement contained in it, has defendant destroyed its force and effect by the parol evidence he adduced, since he depends entirely upon such character of proof?

From a careful study of the defendant's testimony, we fail to find any dependable proof that the deed and note in question were forgeries, or even that they contained stipulations fraudulently or erroneously inserted. Counsel for plaintiff repeatedly tried to get him to say whether or not he came before a deputy clerk of court and signed the act of sale now under consideration, but he invariably refused to answer the question, telling counsel to ask his counsel whom he had employed to do his talking. He simply refused to make a statement on that point. It will be borne in mind that by agreement defendant's testimony was taken out of court, so plaintiff was without the aid of the court to force him to answer the questions. He did finally deny that he signed the note sued on.

Defendant's testimony is not of that high character necessary to overcome the legal presumption in favor of the verity of this authentic act and note. He offered no other proof to corroborate him. Not only is the authentic act presumed to be full proof of what it contains, but plaintiff testified that defendant sought to repurchase this proper-

ty, and that the said act of conveyance and the said note are genuine in all particulars.

[redacted] Defendant carried the burden of proving the grounds of his attack, and failed to discharge it.

The judgment of the lower court is affirmed, defendant appellant to pay all costs of appeal.

The right to apply for a rehearing is reserved to defendant, inasmuch as the judgment of this court on a former hearing in which the plea of prescription was sustained did not pass upon the merits of the case.