No. 536

First Circuit

## FADAOL v. RIDEAU

(May 6, 1930. Opinion and Decree.)

552

E. V. Boagni, of Opelousas, attorney for plaintiff, appellant.

George K. Perrault, of Opelousas, attorney for defendant, appellee.

ELLIOTT, J. Nahron Fadaol brought suit against Jean Baptiste Rideau for $264, alleged to be due him on a note for that amount.

The defendant, Rideau, denies that he executed the instrument described in the petition of the plaintiff. He pleads under reservations, and, in the alternative, the prescription of five years.

Under the answer, the burden of proof is upon the plaintiff to prove that the signature which the instrument sued on bears in the form of a mark is that of the defendant. If that fact be established, then the burden is upon the defendant to show the fraud and misrepresentation alleged by him in regard to the amount which it calls for.

J. C. Fadaol, witness for the plaintiff, and J. B. Rideau, defendant, both testified that defendant made payments on his indebtedness to the plaintiff contracted in 1920, but they differ widely in regard to the time at which it was done.

J. C. Fadaol testifies that the payments were made, one September 2, 1922, for $20, another September 19, 1922, for $80, and that on October 1, 1923, the interest was paid up to that time. Defendant testifies that he paid $20 in October, 1920, and $80 in September or October, 1921, and in November, 1921, he paid approximately $15 in

interest. Therefore it must be first ascertained whether this note on which plaintiff has brought suit bears the genuine mark or signature of the defendant. If that fact does not appear, then consideration of other matters is unnecessary.

A mark is not a signature. The mark of a person who does not know how to write is not a signature, but stands in the place of his signature, and is sufficient for every purpose except for making an olographic will.

The Negotiable Instruments Law, Act No. 64 of 1904, sec. 19, provides that:

"The signature of any party may be made by a duly authorized agent. No particular form of appointment is necessary for this purpose; and the authority of the agent may be established as in other cases of agency."

The Civil Code, art. 2997, provides, that the power "to draw or indorse bills of exchange or promissory notes" must be express and special. And, whenever the Civil Code provides that a mark may be made in signing, it says that the party signing in that way must himself affix his mark. Civil Code, art. 190, subd. 2, arts. 1582, 2234; Code Practice, art. 675.

In this state the mark provided for in our Civil Code and Code Practice is usually made in the form of a cross, the same as in the common law.

Blackstone, speaking of the common-law method of signing, says:

"The method of the Saxons was for such as could write to subscribe their names, and whether they could write or not, to affix the sign of the cross, which custom our illiterate and vulgar do, for the most part, to this day keep up, by signing a cross for their mark when unable to write their names." Blackstone's Commentaries,

book 2, subject, "Rights of Things," c. 20, sec. 304, p. 225.

Under the Civil Code, "he who claims the execution of an obligation must prove it." Article 2232.

"If the party disavow the signature * * * it must be proved by witnesses or comparison, as in other cases." Civil Code, art. 2245.

"If the defendant deny his signature in his answer, or contend that the same has been counterfeited, the plaintiff must prove the genuineness of such signature, either by witnesses who have seen the defendant sign the act, or who declare that they know it to be his signature, because they have frequently seen him write and sign his name. But the proof by witnesses shall not exclude the proof by experts or by a comparison of the writing, as established by the Civil Code." Code Practice, art. 325.

In this case the plaintiff endeavors to show that defendant owes the note, by showing that he owed the amount called for by the note.

J. C. Fadaol, manager of Nahon Fadaol's, his father's, business since 1915, substantially states: That, in the spring of 1920, the defendant requested the plaintiff to advance, not only to him, but his two sons as well, through the crops until that fall. As no definite arrangement was made as to what amount would be needed, no note was taken; but the account was an open one. Due to high prices of foodstuff and other commodities, his bill ran much higher than he anticipated. When the fall of the year came, due to low price of cotton, he was unable to pay up all, but caused witness to execute the note in this case, which was discounted at Opelousas-St. Landry Bank & Trust Company. That the note sued on was given at the end of the year, closing the account, and evidences the balance due on said account. That matters rocked along until the fall of 1921, when he failed to make any payment whatever. In 1922, on the 2d of September, he paid me $20; on the 19th, $80. There was no other payment made on this note until 1923, when on the 1st of October he paid the interest, or a trifle more. That defendant made repeated promises, but never paid any more, etc.

The note sued on, bearing date December 16, 1920, shows a name affixed to it,
      his
"J B x Rido." It appears on its face that
   mark
                        his
the mark was made and the name "J B x
                       mark
Rido" was written by the hand of J. C. Fadaol, who signs as the only witness. It is evident that the mark was not affixed by defendant; still, if J. B. Rideau, standing by, understandingly authorized J. C. Fadaol to affix his mark to the instrument sued on, as appears to have been done, then what was done must be regarded as having been done with defendant's consent, within the meaning of the law, Civil Code, arts. 1811 and 1819, and, though defendant may not have even touched the pen, the signing would have been binding on him.

The signing is not otherwise testified to by J. C. Fadaol, but he was later questioned in regard to the credits on the note sued on, which also purports to have been signed by J. B. Rido, by making his mark, all in the handwriting, however, and witnessed by, J. C. Fadaol.

"Q. You didn't look to have some disinterested person sign as witness? Do you usually sign your name as witness to obligations due yourself?

"A. I did it on a thousand and one notes besides that one.

"Q. Is it usual for you to sign peoples

names out of their presence, and sign it as witness, yourself?

"A. Yes, I did it as a legal transaction.

"Q. Is that your custom?

"A. No, it is not my custom, I gave him credit for what he paid."

The defendant testifies: That he signed a note for $100 in favor of the plaintiff, at plaintiff's request, in the early spring of 1920. That Manuel Rideau, his son, indorsed for him. That Manuel also signed a note at the same time, obtaining in that way advances for himself, for the same amount. That he indorsed for his son Manuel, his son and himself standing for each other. That two colored customers in the store were called to act as witnesses.

Manuel Rideau, called as a witness by defendant, corroborated his father.

The date and amount of the note sued on will not admit of any comparison with the note which the defendant admits signing. Not only is it different in date and amount, but Manuel Rideau never indorsed it, and J. C. Fadaol is the only witness, while the note which defendant admits having signed was, he says, witnessed by two parties, who could not have been J. C. Fadaol, because defendant says that they were customers in the store.

Defendant is an illiterate negro farmer. He knows nothing about business methods. The signing of a note indorsed by his son to obtain advances from the plaintiff for making his crop in 1920 was for him an important event, a matter that he could be expected to remember.

The testimony of the defendant and his son has received our consideration; we find no reason for not accepting their testimony. The plaintiff called a witness in rebuttal, but the witness testified to nothing of any consequence. J. C. Fadaol did not himself,

nor did anybody else, take the stand in rebuttal to deny the testimony of the defendant and his son, according to which, the instrument sued on cannot be the note which the defendant signed. Defendant is positive that he did not sign any other note and that he did not contract for advances beyond $100.

J. C. Fadaol testified that defendant promised at various times to pay the note sued on, but defendant denies that he did so. Plaintiff did not call on anybody to support him. He testified that his father and mother did not know how to read and write, which explains why his father left the management of such matters entirely to the witness. Still his father has, it seems, conducted an important mercantile and advancing business in the town in which he lives since 1907, borrows money from the bank, etc.

It is not necessary to pursue the matter any further. The plaintifff has failed to show by a preponderance of the proof on the subject that defendant signed the note sued on.

The lower court rejected plaintiff's demand. The case was decided correctly.

Judgment affirmed; plaintiff-appellant to pay the cost in both courts.

LeBLANC, J. (dissenting). Plaintiff, a merchant engaged in business in the city of Opelousas, instituted this suit against the defendant on a promissory note. The note is for the sum of $264, is dated Opelousas, La., December 16, 1920, is payable February 1, 1921, and bears 8 per cent per annum interest from date and 10 per cent additional as attorney's fees in case it be placed in the hands of an attorney for collection. The defendant, being an illiterate negro, the note is signed by mark, wit-

nessed by J. C. Fadaol, a son of the plaintiff. It bears indorsements of two payments aggregating the sum of $100 and an interest payment on October 1, 1923.

The answer of the defendant is a denial of any liability, with an averment that he had at one time executed a note of $100 in favor of the plaintiff which had been liquidated by the payments alleged in plaintiff's petition, although on different dates than stated, and a special averment that, if the note signed by him was for a greater amount than $100, then "his signature to the same was obtained by fraud and misrepresentation on the part of the plaintiff. * * * "

On this issue the case went to trial, which resulted in a judgment by the district judge in favor of the defendant, dismissing the plaintiff's suit at his costs. From that judgment the plaintiff has appealed.

From the evidence it appears that the defendant, a farmer working at the time as a share cropper, was obtaining advances in the way of groceries, merchandise, and supplies from the plaintiff. On December 16, 1920, his account showed a balance of $264, which was converted into a note for a like amount; that being the note sued on. The defendant being illiterate, the note was prepared and the signature affixed by mark, all of this having been done by J. C. Fadaol whose name appears on the note as a witness. It might be mentioned here that the plaintiff also is illiterate, and this son attended to all his clerical work and had a considerable part in the entire management of the business.

On December 30, 1921, the plaintiff obtained a loan of $4,500 from the Opelousas-St. Landry Bank & Trust Company, for which he gave his personal note secured by the pledge of a number of smaller notes held by him, among which was the note of the defendant.

According to the testimony of plaintiff's son, repeated efforts were made by him to collect from the defendant the amount of his note. He succeeded in collecting the amounts endorsed on the back of it, turning over these amounts as he collected them to the Opelousas-St. Landry Bank & Trust Company. All further effort at collecting anything after October 1, 1923, having failed to bring about any result except promises, plaintiff instituted this suit on March 5, 1928.

The defendant does not deny his arrangement with the plaintiff about obtaining advances while he was cropping; the only direct conflict between them being as to the amount of the note that was executed.

If the defendant's contention be correct, it is evident that the plaintiff, through his son, or both of them, deliberately took advantage of an illiterate negro, and in affixing his signature by mark to a note of $264, when in reality it should have been for $100, perpetrated the grossest kind of fraud.

In finding for the defendant, the district judge necessarily had to conclude that there was fraud. In his written reasons for judgment he charges the plaintiff with the burden of "making out his case by a preponderance of evidence," and states that he failed "to make out his case as the law requires." He seems to have overlooked that rule of evidence which shifts the burden of proof from the plaintiff to the defendant who charges fraud or pleads some special defense in exoneration of an obligation. Fraud especially must always be proved by him who alleges it. Civil Code, art. 1848. Concerning the matter of the

burden of proof on the subject of obligations, there is article 2232, Civil Code, which reads as follows:

"He who claims the execution of an obligation must prove it. On the other hand, he who contends that he is exonerated, must prove the payment or the fact which has produced the extinction of the obligation."

This court had occasion to consider this question in the case of Schwartz Bros. vs. Shaheen, 8 La. App. 68, in which the issue was the same as is here presented, and the defendant was held to the burden of proving the fraud of which he complained.

Tested by this rule, the defendant in this case cannot be exonerated from an obligation, legal and valid on its face, because he also has failed to carry the burden which the law imposed on him.

Under the provisions of the Negotiable Instruments Law, the note here sued on created a prima facie valid obligation.

"Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value." Negotiable Instruments Law, Act No. 64 of 1904, sec. 24.

There is not anything in the record to indicate that the plaintiff or his son are people who would engage in a practice such as they are charged with. The father had been in business for a long number of years, and the son had been its manager since 1915. They seem to have prospered, and must have enjoyed the confidence of one of the banking institutions of their city at least, as the Opelousas-St. Landry Bank & Trust Company loaned the father as much as $4,500 on his personal note, secured only by the pledge of notes of the character of the one here sued on. Judged by the extract offered in evidence which showed the statement of the defendant's account, and the son's testimony in connection therewith, their system of bookkeeping appears to have been fairly accurate and complete. These matters are mentioned as circumstances to be taken into consideration in weighing the testimony of the defendant's son concerning the whole transaction against that of the defendant, who exaggerated quite a bit, was evasive in several instances and uncertain in most of his statements, except the one to the effect that the note he was made to execute was for the sum of $100, and had been indorsed by one of his sons. As a corroborating witness he produced his son, who testified that his father had executed a note for $100, which he had indorsed, but he knew nothing whatever about the note sued on, nor was he at all familiar with his father's affairs and dealings with the plaintiff.

A stronger character of proof should be required to convict one, it might be said, of so serious a charge as is made against the plaintiff in this case.

In the case of Calhoun vs. McKnight, 44 La. Ann. 575, 10 So. 783, 784, the Supreme Court in commenting on the character of evidence required in cases in which there was a charge of fraud, said:

"Fraud is never presumed. While courts recognize the cunning concealment in which it shrouds its devious practices, and the difficulty of tracing it by direct proof, and therefore give due weight to all circumstances indicating its existence, yet such circumstances must be of a character to convince the mind clearly before they can support a conviction of such an offense, almost akin to crime."

No such circumstances appear in this case. The district judge, in applying the wrong rule of evidence, incorrectly decided against the plaintiff, dismissing his suit.

The judgment should be set aside and reversed, and rendered in favor of the plaintiff and against the defendant as prayed for.

For the foregoing reasons I respectfully dissent.