This is a petitory action in which plaintiff, John W. Reeves, sues to recover an undivided one-fifth (1/5) interest in and to the following described land in Webster Parish, Louisiana, to-wit:
West one-half (W. 1/2) of northeast one-quarter (N.E. 1/4), northeast one-quarter (N.E. 1/4) of northwest one-quarter (N.W. 1/4) and twenty-eight (28) acres off of the east side of the northwest one-quarter (N.W. 1/4) of northwest one-quarter (N.W. 1/4) of section twenty-six (26), Township 23 North, Range 11 west, containing one hundred forty-eight (148) acres. These and other tracts adjacent were patented to Austin A. Reeves, plaintiff's father, by the United States Government prior to the Civil War. The patentee died on November 2, 1908, and his wife, Sarah Ann, plaintiff's mother, died in February, 1900. Besides plaintiff there were four other children, all of whom reached majority, namely:
A.E. Reeves, A.L. Reeves, Jennette Reeves, who married W.J. Kelly and Emma Reeves, who married L.E. Russell.
It does not appear that the successions of the decedents were opened.
A deed was executed by A.E. Reeves, A.L. Reeves, Mrs. Kelly and Mrs. Russell, authorized by their husbands, unto J.F. Giles, conveying said one hundred forty-eight (148) acres. J.W. Reeves, plaintiff herein, is also named as a grantor in this instrument and one of the seven signatures thereon is "J.W. Reeves". This deed was registered in Webster Parish on February 10, 1922. It is dated October 14, 1911, but it is certain all grantors did not sign same on that date.
On February 8, 1932, the widow and heirs of Giles conveyed the tract along with *Page 826 
other acreage unto R.A. Smith, B.L. Slack and I.B. Slack. B.L. Slack acquired the interests of I.B. Slack and R.A. Smith in the land and thereafter sold the entire tract to the Webster Development Company, Inc. This company on September 4, 1937, conveyed the land to the Springhill Land Company, Inc., and on December 22, 1938, that company sold and conveyed to Southern Kraft Corporation fifty-eight (58) acres of the tract. The Southern Kraft Corporation and the Springhill Land Company, Inc., were made defendants in this suit.
Since trial below the existence of the Springhill Land Company, Inc., has been terminated by liquidation. Its assets were acquired by the Union Producing Company. On petition therefor, assented to by counsel of the other litigants, this company has been substituted defendant in lieu of the liquidated corporation.
Defendants deraign their title back to the United States Government, being the same chain hereinabove stated, plus other instruments. They allege that plaintiff signed the deed to Giles and therefore is without interest in the land.
Defendants called in warranty the resident warrantors in the chain of title terminating in them, respectively, and prayed for judgment against said warrantors. They also pleaded the prescription of ten years acquirendi causa. The answers of the warrantors are substantially the same as that of the defendants.
The lower court gave judgment for plaintiff as by him prayed for and rendered judgments against the various warrantors. Defendants only prosecute appeal.
A solution of this case hinges upon whether the proof establishes that plaintiff signed the deed to Giles, admittedly signed by his two brothers and two sisters. This deed was signed by A.E. Reeves in Roger Mills County, Oklahoma, where he then resided, and was on November 10, 1911, acknowledged by him before a notary public of that county. It was signed by A.L. Reeves, Jennette Kelly and her husband in Webster Parish, in the presence of two witnesses, one of whom proved the execution thereof by subscribing to the customary affidavit. On October 14, 1911, Mrs. Russell and her husband also signed the deed in Webster Parish before two witnesses and the instrument was likewise proven by affidavit of one of said witnesses.
If J.W. Reeves signed the instrument, he did so in Nolan County, Texas, on or about October 28, 1911, as appears from his purported acknowledgment thereto attached, which we copy in full, to-wit:
"The State of Texas:
"County of Nolan:
"Before Me J.W. Holmes, a notary public in and for said County and State, on this day personally appeared J.W. Reeves proved to me on the oath of Harry Hunt, known to me, to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.
"Given under my hand and seal of office, this 28th day of October, 1911.
"J.W. Holmes
"Notary Public, Nolan County, Texas."
There were no witnesses to his signature on the deed. When this deed was offered in evidence, plaintiff objected to its admissibility for the reasons:
That his signature thereto is a forgery and for lack of form and insufficiency of proof. The objection was overruled and the offering admitted subject to the objection, but the court, when finally passing on the case, held that it was inadmissible because there were no attesting witnesses to plaintiff's signature. The issue of forgery, because of this ruling, was not discussed nor passed on. Without the deed in evidence, defendants and warrantors were left without any semblance of title on which to stand. We think the ruling erroneous. The deed, under Act No. 256 of 1918, was admissible in evidence.
There is no law in this state which requires that transfers of real estate sous seing prive to be effective against the grantor therein, his heirs or assigns, be attested by witnesses. The converse is true of authentic acts. Civil Code, Art. 2234.
Art. 2240 of the Civil Code specifically provides that all acts may be executed under private signature except such as the law requires must be passed before a notary public or other officer exercising the functions of that position; and Art. 2242 of the Civil Code ordains:
"An act under private signature, acknowledged by the party against whom it is adduced, or legally held to be acknowledged, *Page 827 
has, between those who have subscribed it, and their heirs and assigns, the same credit as an authentic act."
No reference is made in this article to witnesses.
Of course, it is not contended, nor could it be successfully, that an instrument signed by the grantor alone, and not acknowledged by him nor otherwise proven, would be admissible in evidence; but if, after signing the act, he does acknowledge it in the manner required by law, its evidential character undergoes a decided change.
In the states where the common law prevails, so far as our knowledge extends, it is sufficient that deeds to real estate be signed by the grantor alone and be acknowledged by him before a notary public without witnesses. Such acts are self-proving and, of course, admissible in evidence. Many deeds conveying real estate in this state have been executed in the common law states under this form of act and acknowledgment. It has often been held that deeds thus acknowledged are not admissible in evidence without proof of the genuineness of the grantor's signature thereto, dehors the instrument and acknowledgment. Leibe v. Hebersmith, 39 La.Ann. 1050, 3 So. 283; Langley and Kinkead v. Burrows Company, 15 La.Ann. 392; Miller v. Wisner, Sheriff, et al., 22 La.Ann. 457.
Until such additional proof is adduced, the status of the act is the same as one under private signature.
It often happened that considerable difficulty was experienced in proving the execution of such instruments to the degree necessary to procure their admission in evidence. The older they were the greater the difficulty. This situation prompted the adoption by the Legislature of remedial statutes designed to obviate said difficulty, the last of which is Act No. 256 of 1918, which, in part, reads as follows: "* * * that all deeds and other acts under private signature heretofore acknowledge before any * * * Notary Public of any one of the States of the Union, * * * whether said acknowledgment be signed or not signed by the party making it, or whether said acknowledgment be made in the presence of or out of the presence of witnesses, shall be deemed, taken and accepted as prima facie valid and received in evidence without further proof."
It will be observed that this act comprehends "all deeds" heretofore acknowledged. It does not operate prospectively; and since a deed may be perfectly valid as such without attesting witnesses, one of that character when acknowledged in keeping with the requirements of this act, under its unambiguous terms, is to be taken and accepted "as prima facie valid and received in evidence without further proof"; and this, too, whether the acknowledgment has been attested or made out of the presence of witnesses.
This brings us to the question of forgery.
Art. 2244 of the Civil Code provides that "the person against whom an act under private signature is produced, is obligated formally to avow or disavow his signature." To the same effect is Art. 324 of the Code of Practice. Plaintiff disavowed his signature when confronted with the original deed to Giles and supported the disavowal with his oath.
Art. 325 of the Code of Practice establishes a rule of evidence in cases involving instruments under private signature when the genuineness of the signature of the grantor or obligor thereon is disavowed. It reads:
"If the defendant deny his signature in his answer, or contend that the same has been counterfeited, the plaintiff must prove the genuineness of such signature, either by witnesses who have seen the defendant sign the act, or who declare that they know it to be his signature, because they have frequently seen him write and sign his name.
"But the proof by witnesses shall not exclude the proof by experts or by a comparison of the writing, as established by the Civil Code."
In the present case it is the plaintiff who has denied his signature to an instrument, the foundation of the defense. This reversal of positions does not militate against application of the rule laid down in the quoted article of the Code of Practice. Defendants and warrantors pleaded the deed to Giles as a complete bar to plaintiff's suit. They vouched for the genuineness of all signatures to the instrument and took the affirmative of the issue vel non of genuineness; and the burden of overcoming plaintiff's disavowal rested upon them. Plaintiff had the negative of the issue.
The penalty for unsuccessfully contending that his signature to an instrument *Page 828 
is a forgery is that the litigant is cut off from all other defenses. Code of Practice, Art. 326.
It is true that with the Giles deed in evidence a prima facie case for defendants and warrantors was made out. However, plaintiff's disavowal, supported by his sworn testimony, neutralized this prima facie case and the burden of proof on the issue then shifted to defendants and warrantors. The cardinal rule of evidence that he who affirms is charged with the duty of proving the facts forming the basis of his affirmation, is applicable.
Concerning the general rule of evidence here discussed, American Jurisprudence, Vol. 20 page 135, Sec. 132, contains this very illuminating discussion:
"The burden of proof, in the sense of the burden which rests upon a party to establish the truth of a given proposition or issue by the quantum of proof demanded by the law in the case in which the issue arises, never shifts during the course of the trial, but remains from the first to the last upon the party on whom the law cast it at the beginning of the trial, and the party upon whom the burden rests must sustain his position by the degree of proof which the law requires. The duty of going forward with the evidence, however, that is, the burden of proof in the sense of the duty of producing evidence to meet the evidence produced or the prima facie case made by one's adversary — shifts or passes from side to side as the trial of the case progresses and evidence is introduced by the respective parties. In short, the burden of proof in the sense of the ultimate risk of non-persuasion, never shifts from the party who has the affirmative of an issue, although the burden of going forward with the evidence may shift at various times during the trial from one side to the other as evidence is introduced by the respective parties."
We have reached the conclusion that the record as a whole substantiates the contention that plaintiff signed the deed to Giles. This conclusion deletes from consideration all other tendered issues and pleas.
The land in controversy was the homestead of the Reeves family. The last member thereof to live on it was A.L. Reeves. He abandoned the place in the year 1909 or 1910. It was not thereafter resided on by anyone. The improvements from age or other causes ceased to be. The land is located in the hill section of the state and after the merchantable timber was removed, had little value. Parts of it sold for taxes. Plaintiff paid no taxes whatever on the property. The discovery of oil not far from the land caused substantial ascent in its value. Defendants paid thirty ($30) dollars per acre for it.
Plaintiff left Louisiana in 1890 and thereafter worked at manual labor in several of the states. He visited his kinsmen in Webster Parish for short intervals in 1909, 1910, 1911 and 1912. During these years and thereafter he corresponded regularly with different members of the family and some of them knew of his whereabouts from time to time. For the past twenty-two years he has made his home in the State of Oregon. He admits that he left the handling of the family property to his brothers and sisters and made no inquiry as to its disposition until 1939, after an absence of twenty-seven (27) years, and after its value had materially increased.
Plaintiff admits that he was working in Sweetwater, Texas, for about four weeks in the fall of 1911 and on the line of the Santa Fe Railroad, which runs through Sweetwater, for a considerable part of that year. Sweetwater is the county seat of Nolan County. The purported acknowledgment of plaintiff to the deed to Giles was made before a notary public of that county.
All of the Reeves heirs, by deed dated February 14, 1912, sold and conveyed twenty-four (24) acres of the family property to Gladys Braley. The signatures thereon in every respect are virtually identical with those affixed to the Giles deed. Plaintiff was the last to sign. He objected to its admissibility on the ground of non-relevancy and lack of authenticity. The instrument with acknowledgment was obviously relevant to relevant facts and therefore competent evidence under that legal principle. It is in the same form as the deed to Giles. Its admissibility is warranted by Act No. 256 of 1918.
Plaintiff also charges that his signature to the Braley deed is a forgery. It so happens that his purported acknowledgment thereof was taken by a notary public of Gaines County, Texas, on March 23, 1912. This county is not over fifty (50) miles from Nolan County. If plaintiff signed one of these deeds, he signed both of them. If one is a forgery, both are. His two signatures are as nearly identical in appearance, structure *Page 829 
and letter formation as could be expected of signatures made by the same person several months apart.
It is pertinent here to ask and we are curious to know how these two deeds could have made their way to two different places in the State of Texas, the signature of J.W. Reeves placed thereon and notarial acknowledgment to each made by someone representing himself to be J.W. Reeves, unless sent by a member of the family or other person at his or her instance, to plaintiff.
It is asking too much of a court to believe that these two notaries could have been imposed upon by the same person fraudulently representing himself to be J.W. Reeves; or to believe that each would have loaned himself to a scheme to defraud. Both acknowledgments bear the impress of the notary's seal. There can be no doubt that someone representing himself to be J.W. Reeves appeared before each notary and informed him that he had signed the deed and desired to acknowledge his signature thereon. If such person was not the plaintiff, then who could he have been? There was no other person in either county, so far as this record shows, interested in the land and to no other person would the deeds have been sent for execution and acknowledgment.
These two deeds were evidently returned to a member of the family in Louisiana who delivered them to the grantees and received the price. This person doubtless knew the deed was signed and acknowledged by plaintiff or else they would not have been delivered. His signature was well known to all members of the family. His portion of the purchase prices was doubtless remitted to him after delivery of the deeds.
Another significant fact is that A.E. Reeves signed and acknowledged the deed to Giles on November 10, 1911, which was thirteen days subsequent to plaintiff's acknowledged signature thereto. Evidently A.E. Reeves was well acquainted with the signature of his bother, J.W. Reeves, and recognized it on the deed as being genuine, otherwise he would not have signed it himself.
It is reasonable to conclude, therefore, that since plaintiff admits he entrusted to his brothers and sisters the complete handling of the property to the extent of his interest therein, when either of them sent him a deed to sign he promptly complied with the request and returned the instrument after acknowledging his signature before the most convenient notary public.
While it is beyond debate that the correctness of a certificate of acknowledgment to a deed may be impeached by a person having an interest so to do, yet, to accomplish impeachment, the supporting evidence must be of a high degree; and especially is this true when the deed and the attached certificate have been upon the public records for many years. Am.Juris. Vol. 1, page 380, Sec. 155, has this to say as regards impeachment of such certificates, to-wit:
"The decisions disclose a very decided tendency on the part of the courts to attach weight to certificates of acknowledgment and to view attempts to discredit them with suspicion and distrust. Consequently, in all cases, whether in proving fraud, duress, or imposition, or in establishing any other defense to overcome the force of the certificate, a high degree of proof is required. It frequently has been stated as a rule that in order to impeach a certificate, the evidence must be clear, cogent, and convincing beyond reasonable controversy. Various other expressions have also been used. It has been said that such evidence must be almost as strong as that required to correct a mistake in a deed."
There is other testimony in the record concerning the genuineness of plaintiff's signature on both deeds to which we attach little weight. For instance, one witness, not in any sense an expert, was quite certain plaintiff signed neither deed but was as equally certain specimens of his genuine signature, written under the eye of the trial judge, were not genuine. Another witness was uncertain in each instance, although inclined to think the signatures on the deed not genuine.
There are two or three letters in evidence bearing plaintiff's admitted signature. These, in some respects, are unlike the signatures on the deeds, while in other respects they resemble them. The specimens written in court are in material respects unlike the signatures on the deeds and letters. Very little benefit was derived from comparison of handwritings. We would not expect to see in signatures of a laboring man that near uniformity of letter structure and formation as is present in signatures of persons who habitually write; and, in addition, the age factor enters into the question. Plaintiff now is much older than when he signed the deeds. *Page 830 
For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed. Plaintiff's demand is rejected and his suit dismissed at his costs.
DREW, J., recused.