LANDRY, Judge.
On May 10, 19SS, plaintiff herein, Milton J. Eschete (pronounced Esh-tay) instituted this action against defendants, August Kraemer and Dozelia Kraemer Eschete Lignon (plaintiff’s former father-in-law and former wife, respectively), to annul and set aside an act of sale dated February 13, 1932, and recorded February 15, 1932, wherein plaintiff allegedly sold defendant August Kraemer a 40 acre tract of land situated in Terrebonne Parish for the recited consideration of $50, as well as rescind the subsequent transfer of said property from defendant August Kraemer to defendant Dozelia Kraemer Eschete Lignon dated March 12, 1952, on the ground the signature of plaintiff appearing on the deed of February 13, 1932 is a forgery.
Plaintiff’s petition specifically asserts his signature on the disputed instrument was forged thereon and prays for the following relief: (1) That the signature on said deed be expressly declared a forgery; (2) That the deed from plaintiff to defendant August Kraemer as well as the subsequent transfer of subject property from said defendant to defendant Dozelia Lignon be declared null and void and cancelled and erased from the conveyance records of Terrebonne Parish; and (3) That defendants be requested to account for the fruits and revenues produced by the property from February 13, 1932, to the present time.
Defendants answered plaintiff’s petition denying the alleged forgery and requesting reformation of the deed from plaintiff to August Kraemer to reflect the true consideration therefor, namely, support furnished by defendant August Kraemer to Lawrence and Stella Eschete (minor children of plaintiff and defendant Dozelia Kraemer Eschete Lignon) prior and subsequent to the deed of February 13, 1932. In addition, both defendants reconvened for damages for alleged libel predicated upon the- implications and inferences arising from plaintiff’s accusation of forgery. Defendants’ reconventional demands were met by numerous exceptions as well as pleas of prescription, res adjudicata and lack of jurisdiction ratione materiae and ratione personae. The trial court rejected plaintiff’s suit without passing upon the recon-ventional demand of either defendant. Inasmuch as defendants have neither appealed nor answered plaintiff’s appeal, said recon-ventional demands are presumed abandoned thereby obviating the necessity of our considering either said reconventional demands or plaintiff’s exceptions and pleas thereto.
In view of the foregoing it is clear the primary issue presented herein for consideration is one of fact, namely, whether the signature of plaintiff on the deed to defendant August Kraemer of date February 13, 1932, is genuine or spurious.
The matter of burden of proof in the case at bar was vigorously contested in the court below and forcefully argued before this court in both oral argument and brief. Learned counsel for plaintiff-appellant have cited cases in support of their contention the burden of proof rests upon defendants who rely upon and, according to plaintiff’s counsel, must therefore establish the genuineness of the signature on which defendants’ title depends. On the contrary, esteemed counsel for defendants maintains Article 2236 of LSA-R.C.C. and the jurisprudence interpretative thereof holds that the rule advocated by plaintiff herein applies only to acts under private signature and has no application to authentic acts which latter class of instruments are proof of their contents including the signatures thereon. Counsel for defendants further argues the law of this state is firmly established to the effect that he who alleges forgery of a signature affixed to an au *477 thentic act bears the burden of proving the charge.
In support of the contention that defendants must discharge the onus of proving the controverted signature genuine, counsel for plaintiff relies upon the provisions of Article 325 of the former Louisiana Code of Practice (which article, our research discloses, is omitted from the recently adopted LSA Code of Civil Procedure effective January 1, 1961), Articles 2244 and 2245, LSA-Civil Code and the following authorities, namely, Fadaol v. Rideau, 13 La.App. 551, 128 So. 193; Huddleston v. Coyle, 21 La.Ann. 148; Falgout v. Johnson, 191 La. 823, 186 So. 349; Reeves v. Southern Kraft Corp., La.App., 1 So.2d 824; Succession of Gaines, 38 La.Ann. 123; Succession of Wadsworth, 152 La. 131, 92 So. 760 and Succession of McDonogh, 18 La.Ann. 419.
Article 325 of the former Louisiana Code of Practice (which has hereinbefore been shown to have been omitted from the now controlling LSA-Code of Civil Procedure) reads as follows:
“Article 325 (C.P.) Denial of signature by Defendant — Proof of genuineness — If the defendant deny his signature in his answer, or contend that the same has been counterfeited, the plaintiff must prove the genuineness of such signature, either by witnesses who have seen the defendant sign the act, or who declare that they know it to be his signature, because they have frequently seen him write and sign his name.
“But the proof by witnesses shall not exclude the proof by experts or by a comparison of the writing, as established by the Civil Code.”
Articles 2244 and 2245, LSA-Revised Civil Code, contain the following provisions :
“Art. 2244. The person against whom an act under private signature is produced, is obliged formally to avow or disavow his signature.
“The heirs or assigns may simply declare that they know not the handwriting or the signature of the person they represent.”
“Art. 2245. If the party disavow the signature, or the heirs or other representatives declare that they do not know it, it must be proved by witnesses or comparison, as in other cases.”
The codal provision and authorities so strongly relied upon by counsel for plaintiff herein are clearly without application to the instant matter. Our reading of Fadaol v. Rideau, 13 La.App. 551, 128 So. 193 and Huddleston v. Coyle, 21 La.Ann. 148, reveals the court was in each instance considering a promissory note and correctly ruled the party suing thereon bore the burden of proving the genuineness of the signature of the maker. In Falgout v. Johnson, 191 La. 823, 186 So. 349 and Reeves v. Southern Kraft Corp., La.App., 1 So.2d 824, the rule contended for by plaintiff was properly applied to acts under private signature upon authority of Article 2244, LSA-Revised Civil Code, hereinabove set forth in extenso.
Succession of Gaines, 38 La.Ann. 123, Succession of Wadsworth, 152 La. 131, 92 So. 760 and Succession of McDonogh, 18 La.Ann. 419, all involve alleged forgeries of signatures on testaments which were not nuncupative wills by public act. In this connection it is interesting to note that in Succession of McDonogh, supra, the court pointed out that the burden of proving the authenticity of the signature rests upon the party attempting to prove the will if the allegation of forgery is made prior to probation of the testament but thereafter the burden rests upon the party attacking the validity of the will.
The law of this state has always recognized a clear distinction between that which must be proved (as established by the authorities cited by counsel for plaintiff) and that which is considered authentic and proof of itself as provided for by Article *478 2236, LSA-R.C.C, which is the basis of defendant’s position and which, in its entirety, reads as follows:
“Art. 2236. The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery.”
Predicated upon Article 2236, LSA-R.C.C., supra, it is settled law that in the absence of forgery a deed in authentic form is presumed genuine. Fontini v. Pine Grove Land Co., 167 La. 137, 118 So. 865. An authentic act being proof of itself, a person denying the validity of his signature on a notarized instrument bears the burden of proving the signature is not his own. Abraham Lincoln Home Founding Co. v. Gibson, La.App., 162 So. 237. In LeBoeuf v. Duplantis, La.App., 162 So. 592 and Laborde v. Gagnard, La.App., 50 So.2d 113, it was expressly held that he who alleges the forgery of a signature appearing on a deed bears the burden of proof. Similar pronouncements are to be found in Pierre v. Donaldsonville Motor Co., La.App., 22 So.2d 291 and Barron v. Jackson Parish Bank, 184 La. 886, 168 So. 90.
The distinction between the different codal authorities relied upon by the contending parties herein was clearly and succinctly set forth by the Supreme Court in James v. Rand, 43 La.Ann. 179, 8 So. 623, in the following language.
“To our thinking, there is no conflict between the provisions of the Codes, because they relate to different subjects-matter, — those of the Code of Practice relating to the answer of a defendant to a suit founded on an act under private signature, the genuineness of which is denied, and the effect' of such denial; while those of the Civil Code relate to authentic acts, and the proof afforded by them. When the proceeding is based on an act under private signature, the genuineness of which is denied, the provisions of the Code of Practice control; but, when it is founded on an authentic act, those of the Civil Code control.”
Our research upon the issue at hand fails to disclose a single case involving an authentic act in which the courts of this state have held the allegation of forgery of a signature on such an instrument places the burden of proof of genuineness upon the party relying upon the act. On the contrary, every case in which the issue has been raised has squarely held the burden of proof rests upon the party attacking the authenticity of the signature involved. Such a rule is clearly in keeping with the express provisions of Article 2236, LSA-R.C.C. To hold otherwise would destroy the effect traditionally accorded authentic instruments and render useless and without force the laws of registry and the inferences which have long resulted from public recordation of authentic instruments. Such a ruling would indeed produce chaos and result in complete abrogation of public trust and confidence in the declarations, obligations and commitments of others pronounced, undertaken and made solemnly before a notary public and witnesses. The case at bar graphically demonstrates the unconscionable hardship and burden which could be visited upon purchasers, mortgagees, lessees and owners of other rights in and to real property acquired by notarial acts if we were to adopt the rule urged upon us by counsel for plaintiff. To hold as learned counsel for plaintiff urges would indeed open the door for the unscrupulous to prey upon and harass purchasers, mortgagees, lessees and others who have long since acquired, held and possessed real estate or rights therein or thereto. To adopt such view is to subject every authentic act to jeopardy at the hands of those who, possessing the temerity to do so, would delay their attack until time and circumstances have provided conditions favorable to their cause and then allege forgery safe and secure in the knowledge the law places upon their intended victim the burden of proving the contrary.
*479 The sale from plaintiff to defendant August Kraemer having been executed in the presence of a notary public and two witnesses is unquestionably an authentic act. LSA-R.C.C. Article 2234. It follows, therefore, the burden of establishing the alleged forgery rests upon plaintiff herein.
The record reveals plaintiff was born on the Coteau, Terrebonne Parish, in 1899, at which place he resided until his marriage to defendant Dozelia Kraemer Eschete Lignon in the year 1919. Prior to his marriage, plaintiff, whose education is limited to completion of the third elementary grade, was employed as a farmer and woodcutter. Following his marriage to defendant Do-zelia Lignon, he moved to New Orleans, Louisiana, where he was employed by the city as garbage collector. In the year 1929, plaintiff and defendant separated, the latter taking Stella Eschete and Lawrence Eschete (ages approximately 5^> and 10 years, respectively, issue of her marriage to plaintiff), and placing them in the home of her father, August Kraemer, defendant herein, who supported and reared said children until aproximately 1935 or 1936, at which time they returned to New Orleans to live with defendant Dozelia Lignon.
During plaintiff’s marraige to defendant Dozelia Lignon, and more specifically, on August 23, 1924, plaintiff acquired a 40 acre tract of land situated on the Coteau, Terrebonne Parish, from one Alidore Kraemer, for the price and sum of $1,000. Subsequent to the estrangement which occurred between plaintiff and defendant during the year 1929, there was recorded in the Conveyance Records of Terrebonne Parish, a notarial act of sale executed before Robert P. Blanchard, Notary Public, in the presence of Dr. Joseph S. Mohana and Herman Bergeron, under date of February 13, 1932, which purported to convey to defendant August Kraemer the 40 acre tract of land previously acquired by plaintiff from Alidore Kraemer in 1924, for the recited consideration of $50, which said act of transfer was duly filed of record on February 15, 1932.
On July 6, 1942, defendant Dozelia Krae-mer Eschete Lignon instituted suit against plaintiff in Orleans Parish seeking a divorce predicated upon her alleged separation from plaintiff since 1929. A judgment of said court decreeing an absolute divorce between said parties was rendered July 9, 1942.
The controversial deed of February 13, 1932, wherein plaintiff purportedly transferred subject property to defendant August Kraemer contains the following provisions :
“It is agreed and understood that the vendor shall have the right or option to purchase the same property per redemption sale at any time within seven years from the date hereof, by refunding to the vendee the amount of the consideration hereof. And, in the event of the death of the vendee prior to the redemption of the same, the property shall become the property of the children of the vendor, Lawrence and Stella Eschete.”
There appears in the record of this case an agreement or contract between plaintiff and the law firm of Tracy & Neuhauser, executed March 18, 1939 (7 years and 34 days subsequent to the date of the act in controversy herein), wherein plaintiff transferred to said attorneys an undivided one-half interest in subject property in consideration of their undertaking to bring any action or actions and file any suit or suits necessary to fully protect any and all rights plaintiff may have in or to the property in dispute herein. On November 10, 1953, the foregoing contract was revised to include the firm of Duke, Porterie and Davison, which firm was granted a 10% interest in the property in consideration of services to be rendered plaintiff in the attempted recovery of plaintiff’s property. On May 10, 1955 (more than 14'i4 years following the date of plaintiff’s employment of Tracy & Neuhauser) the instant suit was filed.
*480 Plaintiff’s contention his signature on the deed is a forgery is predicated largely on an alibi, namely, that he was not in Terre-bonne Parish on February 13, 1932, but, on the contrary, was distant therefrom in the marshes engaging in trapping and hunting operations and therefore could not have possibly signed the act of sale to defendant August Kraemer.
According to plaintiff, on February 13, 1932, he was at a hunting and fishing camp located approximately 8 miles below Venice, Louisiana, at the mouth of the Mississippi River, which lodging he occupied in company with his two brothers and a sister-in-law. Although plaintiff’s testimony on this score is somewhat confusing and contradictory, it is obvious he intended to convey the impression that from 1929 to 1939, he went to the marshes in September of each year and remained there continuously until approximately May or June, then returning to New Orleans to resume his employment as garbage collector until commencement of the next trapping season the following September. Plaintiff testified that he hunted and trapped until the end of the season which usually expired in late February and thereafter he remained at the camp to fish and hunt alligators until May or June. He also testified that from September until approximately May or June, he never left the camp for any reason whatsoever. In this regard, plaintiff is corroborated by the testimony of his brothers and sister-in-law, who stated that they resided with plaintiff at the camp from September to May of each year between 1929 and 1939, during which time they saw plaintiff daily. All three of these witnesses testified plaintiff never left or had occasion to leave the camp during the hunting and fishing season and that he could not have spent a night or day away without their knowledge thereof. However, the efficacy of this testimony was considerably diminished when plaintiff on cross-examination admitted he infrequently visited his present wife in New Orleans. After testifying on direct examination that he never left the camp during the hunting and trapping season, plaintiff acknowledged on cross-examination that he did occasionally go to New Orleans and sometimes closed his traps to spend more time away. The foregoing admissions were elicited from plaintiff when counsel for defendants revealed the fact that plaintiff is the father of a child conceived in New Orleans, Louisiana, during the trapping season of 1934. It is only fair to state, however, that, conceding his visits to New Orleans, plaintiff vigorously denied ever visiting Houma during a trapping season. Although plaintiff denied acquaintanceship with the Notary Public Blanchard, before whom the act of sale was passed, Mr. Blanchard testified he was well acquainted with plaintiff and plaintiff’s family. Despite his counsel having previously introduced in evidence a copy of the contract between plaintiff and the law firm of Tracy and Neuhauser (wherein said firm agreed to undertake recovery of plaintiff’s property for a one-half interest therein), plaintiff testified he had no knowledge of the existence of the deed to defendant August Kraemer dated February 13, 1932, until the year 1953, at which time his attorney, Tracy, showed him the deed with his purported signature thereon. Upon cross-examination relative to his having consulted Mr. Tracy in 1939 (after expiration of the seven year redemption period provided for in the deed), plaintiff’s responses became evasive and contradictory. He stated that in 1939 he suspected something was wrong with the property because upon visiting his children in the home of defendant August Kraemer, he could not take them from Mr. Kraemer’s home without being followed. He further explained he was merely trying to recover his property because others were claiming it not because he had sold it. In addition, plaintiff testified he did not know he had been “tricked” until 1953 when he was shown his signature on the deed of February 13, 1932. He further stated that in 1939, he consulted Mr. Tracy solely for advice concerning a divorce, yet at the *481 same time lie stated that he consulted Tracy in 1939 because he had not signed the deed to defendant Kraemer. Notwithstanding plaintiff denied having contacted defendant August Kraemer with regard to exercise of the redemptive right stipulated in the deed of February 13, 1932, he nevertheless testified he transferred a one-half interest in the property to Tracy to “straighten it out” and “bring it back to its right ownership” and because “at that time it was necessary to redeem the property”. We believe no useful purpose would be served by detailing numerous other contradictions contained in plaintiff’s testimony. It suffices to say the credibility thereof was not enhanced thereby.
One other point in plaintiff’s testimony, however, is worthy of mention, namely, plaintiff explained Kraemer’s possession of the property over the years by stating that when he purchased the property in 1924 he entered into a verbal contract with Kraemer in which Kraemer was permitted to farm the property in consideration of Kraemer’s agreement to pay the taxes thereon.
Robert P. Blanchard, testifying on behalf of defendants, stated he was 78 years old at the time of the trial. He further testified that he was a former Clerk of Court and for over 35 years had been engaged as a Notary Public and abstracter. He was personally acquainted with plaintiff and plaintiff’s family inasmuch as he owned a farm on the Coteau prior to 1932 and visited the Coteau once or twice weekly. He was so well acquainted with plaintiff that he recalled plaintiff’s nickname to be “Snoopy”. Blanchard also recalled the deed in question was executed in his office in Houma, Louisiana, on a Saturday morning in his presence and that of the subscribing witnesses, namely, Dr. Joseph S. Mohana and Herman Bergeron, the latter witness being since deceased. Blanchard admitted having passed many hundreds of sales during his, long career as Notary Public but he clearly recalled the circumstances of the act herein under attack because of the unusually long redemption period (7 years) provided for therein, which, incidentally, he stated was the longest redemptive period he was ever asked to insert in an act. In addition, he testified the redemption clause and inheritance provision appearing in the deed from plaintiff to defendant August Kraemer was inserted therein at the specific request of plaintiff.
Dr. Joseph S. Mohana, a retired optometrist, 70 years of age, testifying on behalf of defendants, identified his signature on the act as well as Mr. Blanchard’s. He stated that although he did not specifically recall having witnessed the act and could not identify either plaintiff or defendant, he was positive that the signature appearing on the deed was his own. He also stated that he frequently witnessed acts for Mr. Blanchard, whose notarial office was in the same building as the witness’s own office. In such instances, he almost invariably was present when the parties signed although he conceded that on one or two occasions he may have been called in after the signatures of the contracting parties had been affixed to the act.
Defendant August Kraemer testified that in 1932 plaintiff came to his home on the Coteau early one Saturday morning and offered to sell the property. He at first declined to purchase the property until plaintiff informed him that plaintiff would let him have the property for a nominal price in order to repay defendant for the support rendered plaintiff’s children, Lawrence and Stella, who had been living in defendant’s home since 1929. Plaintiff and defendant then walked the distance of five miles to Houma, Louisiana, to the office of Mr. Blanchard where the sale was prepared, completed and executed and plaintiff paid the sum of $50 in cash. Kraemer testified that plaintiff was personally present and signed the deed. According to Kraemer, seven years later plaintiff returned to Kraemer’s home and discussed redemption of tjj.e property with defendant while defendant was plowing *482 in his field. He then informed plaintiff the redemptive period had expired whereupon plaintiff left and did not return. Later Kraemer went to the parish courthouse in Houma, Louisiana, and with the aid of the parish assessor examined the original deed of record and confirmed that the expiration period provided for therein had in fact expired. Kraemer denied any agreement with plaintiff wherein he agreed to pay the taxes upon the property in return for plaintiff permitting him to farm the land.
Mrs. August Kraemer, wife of defendant August Kraemer, Mrs. Carmelite Countiss, daughter of defendant August Kraemer and sister of defendant Dozelia Lignon, Clair-fey Landry, brother-in-law of defendant August Kraemer, Willie Prestenback, brother-in-law of defendant August Kraemer, and Peter Lignon, husband of defendant Dozelia Lignon, called as witnesses for defendants, testified that at one time or another defendant stated and acknowledged to them either that he was going to sell the property to defendant August Kraemer or that he had sold the property to August Kraemer or that he had attempted to redeem the property from defendant August Kraemer and had been refused.
Of considerable importance and significance is the testimony of plaintiff’s son, Lawrence Eschete, and daughter, Stella Eschete Mayeaux, both of whom testified in substance that during the five or six years they resided with their grandfather, defendant August Kraemer, plaintiff occasionally visited them and on several occasions told them subject property would belong to them in the event of their grandfather’s death. They further testified that relying upon these representations by plaintiff, they expected to inherit the property from their maternal grandfather until they learned of its sale to their mother in 19S2. In this connection, they further testified that upon learning of the transfer from their grandfather to their mother, Mrs. Mayeaux gptified her brother Lawrence and together they contacted their father to ascertain from him whether or not their grandfather had a right to sell the property. They further stated they arranged to see plaintiff at the home of Lawrence Eschete in New Orleans the following day and were there advised by plaintiff that he had sold the property to Kraemer for $50 and that their grandfather had a right to sell it or otherwise dispose of it as he saw fit. Their testimony concerning the admission made by plaintiff in the home of plaintiff’s son Lawrence is corroborated by that of Mrs. Lawrence Eschete who testified she was present and heard the conversation.
Four handwriting experts testified during the trial of this cause, namely: Gilbert Fortier, Jr., of New Orleans, Louisiana, and Charles A. Appel, Jr., of Washington, D. C. (on behalf of plaintiff) and Linton Godown of Memphis, Tennessee and George G. Swett of St. Louis, Missouri (on behalf of defendants) and, as may be expected, Mr. Fortier and Mr. Appel were of the opinion plaintiff’s signature on the deed in question is a forgery, whereas, Mr. Godown and Mr. Swett were equally as positive it was genuine.
All of said experts agree the two basic features involved in handwriting identification are (1) form or design and shape of the letters and (2) manner of execution produced in the writing itself which concerns such elements as speed, skill, lifts, tremors, pen pressure, endings, crossings and other factors involving muscular movements producing habitual individual writing characteristics. The experts further agree that in making an examination of a questioned document, the accepted procedure involves the use of exemplars (known genuine specimens of the author’s handwriting) from which individual characteristics of the writer are determined and then examining and comparing the questioned signature or document with the exemplars to determine whether or not the suspected instrument conforms with the design and method of execution ordinarily indulged in by the individual whose writing it purports to be.
*483 Each of said experts explained that in making the comparison and arriving at their respective opinions they utilized all scientific equipment and apparata available in the exercise of their profession including but not limited to photographic enlargements, microscopes and measuring devices.
Mr. Fortier and Mr. Appel agree the questioned signature was forged by the copying process as distinguished from the tracing method which means that a model or genuine signature of plaintiff was obtained from some source and copied by the forger who attempted to draw or reproduce by his own hand an exact replica of the model employed. Mr. Fortier was of the opinion the forgery was so unskillfully accomplished and so obviously spurious as to be “amateurish”, whereas, Mr. Appel was of the opinion it was rather deftly executed and “pretty good” but easily detectable by an expert.
In addition, Mr. Appel found that plaintiff, being an unskilled writer, evidenced a muscular tension causing his lines to show jogs and jerks instead of flowing smoothly and evenly from one letter to the next. He further noted plaintiff’s signature is characterized by stops, lifts and changes of direction or angle. In short, he found that the questioned signature greatly resembled plaintiff’s signature in the design of the letters but that evidence of the forgery appears in the execution of the lines which are not continuous. More specifically, he stated that, in his opinion, the letters in the disputed signature were not written in a continuous line as were those in the exemplars used but rather were made up of many lines. His conclusion in this regard was predicated on his observation that the forger lifted the pen many times which was necessary for the forger to maintain the similarity of letter design. He readily conceded plaintiff’s signature is characterized by numerous pen lifts but explained that the forger made the mistake of lifting the pen in the wrong places. In this respect he noted that whereas plaintiff customarily lifted the pen at the end of the letters, his examination of the questioned signature indicates the pen was lifted numerous times in the course of forming the individual letters which the forger could not execute in a continuous, unbroken movement. Additionally, he observed the lines of the controverted signature resembled painted lines drawn in to imitate the irregular shape of the letters as well as certain other mistakes in execution characteristically present in plaintiff’s signature.
Mr. Fortier, although not quite as specific as Mr. Appel, employed virtually the same general method of examination and comparison and likewise concluded the signature a forgery. A general distinction exists between their testimony, however, in that Mr. Appel was impressed with the regular pattern and muscular tension exhibited by the exemplars as compared with the significant natural and rapid downstroke of the questioned signature, whereas, Mr. Fortier gave considerable weight to the natural swing he found in the exemplars as distinguished from what he considered to be the self-conscious irregularity of the signature on the deed.
Mr. Linton Godown, who does not have quite the background and experience in the field of document examination as does Mr. Appel and Mr. Fortier but who nevertheless has had a number of years’ experience in dealing with this particular science, used the same general approach as did Mr. Appel and Mr. Fortier. He studied known genuine specimens of plaintiff’s signature, compared them with the signature in question and concluded plaintiff’s signature on the deed to be genuine. Stated concisely, his opinion was based upon similarities of pen pressure concerning which element of handwriting an unskilled and untrained individual would ordinarily possess no knowledge and therefore could not easily duplicate. In this connection he noted the. peculiarities resulting from application of pressure were present at the same places in the exemplars as in the questioned signature. He further observed that a forger *484 being concerned primarily with reproducing an exact pictorial duplicate of the signature being copied could not simultaneously apply identical pressure at the characteristic points as does the author of a genuine signature who is uninhibited in movement. Mr. Godown attributed the many lifts in the signature on the questioned deed to the fact that the pen used (an ordinary steel pen according to the Notary Blanchard) was defective and the ink did not flow freely. He observed the numerous lifts and stops alluded to by Mr. Appel and* Mr. Fortier but explained them by stating they were, in his opinion, unquestionably due to plaintiff’s poor penmanship combined with a malfunctioning pen.
Mr. George G. Swett, whose qualifications are likewise not quite so impressive as those of Mr. Appel and Mr. Fortier but who, like Mr. Godown, has had a number of years’ experience in the field, testified substantially to the same effect as did the witness Godown. He agreed with the conclusions reached by Mr. Godown and found evidence of a faulty writing instrument having been used in executing the disputed signature. In direct contravention of plaintiff’s expert witnesses, Swett found evidence of failure of ink flow and considered the retracing appearance of some of the lines in the questioned signature to be due to a defective instrument in the hands of an unskilled writer.
Both in oral argument and in brief, learned counsel for plaintiff urges our acceptance of the testimony of plaintiff’s experts in preference to that of defendants’ witnesses on the ground the record shows the experience and qualifications of Mr. Ap-pel and Mr. Fortier are superior to those of Mr. Godown and Mr. Swett. In support of this argument learned counsel points to the numerous instances related by Mr. Appel and Mr. Fortier in which their testimony in similar cases has been accepted by various courts.
Esteemed counsel for plaintiff also argues the trial court erred in rejecting all of the expert testimony and deciding the case on the testimony of the lay witnesses and, in addition, placed undue emphasis upon the redemptive clause appearing in the deed involved herein.
As impressed as we are with the qualifications, skill and experience of plaintiff’s experts and with all due deference to those gentlemen, we are not disposed to stamp them or any other witness with the seal of infallibility. Conceding solely for the sake of argument the testimony of plaintiff’s expert witnesses is entitled to greater weight than those of defendant, we must nevertheless consider all of the evidence of record including not only the testimony of plaintiff’s and defendants’ experts but also the testimony of the various lay witnesses and the documentary evidence appearing in the record. The entire mass of evidence must be carefully considered by the court and such weight given the various items thereof as appears reasonable and proper in the light of the evidence as a whole.
The learned trial court rendered written reasons for judgment which are set forth in full in the record of this case. Flis reasons show that he found affirmative testimony of reliable witnesses which he considered of sufficient weight and value to warrant his discounting and disregarding the mere opinions of the experts. Assuming, arguendo, he erred in so doing, he nevertheless reached the proper conclusion herein predicated upon the evidence as a whole, consequently, his error in this regard, if any,- can be of no source of comfort to plaintiff.
We are convinced the testimony of defendant’s expert witnesses corroborated by the lay testimony and documentary evidence of record represents the clear preponderance of evidence in the case at bar.
It is indeed strange that plaintiff while disclaiming any knowledge of the questioned document knew of its unusual inheritance clause in favor of his children, attempted to exercise the right of redemp *485 tion contained therein and admitted he sold the property to defendant August Kraemer. Granted the testimony of defendant August Kraemer and his wife may be tainted with an interest in the outcome of this litigation, the same cannot be said of that of plaintiff’s children, Stella Eschete Mayeaux and Lawrence Eschete, both of whom testified positively that on several occasions plaintiff told them the property would be theirs at their grandfather’s death. We are likewise impressed by their testimony to the effect plaintiff acknowledged he sold the property when they consulted plaintiff about the matter after learning of the sale from defendant August Kraemer to defendant Dozelia Lignon.
Additionally, we believe the learned trial judge was rightly profoundly impressed with the redemptive and inheritance clauses appearing in the deed. It is as incomprehensible to us as it was to the learned trial court that a person possessing the unmitigated nerve to commit a forgery and thereby subject himself to the criminal penalties incident to such reprehensible conduct would afford his intended victim a period of seven years in which to regain that which the forger has risked the possibility of imprisonment to secure. It is not within the realm of reason or common sense to conclude that an individual so unscrupulous as to merit the opprobrious epithet of forger would even remotely consider permitting the occurrence of any circumstance which would spoil his nefarious plan or thwart his prospective gain. Those who stoop to such vile conduct for the sake of financial reward do so with the view of attaining and keeping unto themselves the object of their illegal activity. We conclude as did the learned trial court that the fact that the deed gives the plaintiff the right to redeem the property within seven years for a mere $50 is utterly inconsistent with the allegation of forgery.
Plaintiff’s contention the heirship and redemptive clauses may have been inserted to allay suspicion of forgery and create a false atmosphere of authenticity, although admittedly highly ingenious, is totally without foundation for the reasons hereinabove set forth.
It follows, therefore, plaintiff has failed to discharge the burden of proving the forgery alleged.
Judgment affirmed.